## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARKEL AMERICAN INSURANCE COMPANY
4521 Highwoods Parkway
Glen Allen, VA  23060

        Plaintiff,

vs.

CLEARSTREAM SYSTEMS, LLC
99 Gottlieb Drive
Pearl River, NY 10965

and

DIVERSITECH EQUIPMENT AND SALES, LTD.
d/b/a DIVERSITECH CORPORATION and d/b/a DIVERSITECH
1200 55th Avenue
Lachine, Quebec, Canada  H8T 3J8

        Defendants.

CIVIL ACTION

CASE NO.:

JURY TRIAL DEMANDED

## CIVIL ACTION COMPLAINT

Plaintiff, Markel American Insurance Company, as subrogee of Celtic Sheet Metal, Inc., by and through its undersigned attorneys, by way of Civil Action Complaint against Defendants, Clearstream Systems, LLC and Diversitech Equipment and Sales, Ltd. d/b/a DiversiTech Corporation and d/b/a DiversiTech, individually, jointly and/or severally, alleges the following:

## THE PARTIES

1.  Plaintiff, Markel American Insurance Company ("Plaintiff"), as subrogee of Celtic Sheet Metal, Inc. ("Celtic"), is a corporation organized and existing under the laws of the State of Virginia with a principal place of business located at 4521 Highwoods Parkway, Glen Allen, Virginia 23060.

2. Defendant, Clearstream Systems, LLC ("Clearstream"), is a limited liability company organized and existing under the laws of the State of New York with a principal place of business located at 99 Gottlieb Drive, Pearl River, NY 10965.

3. Defendant, Diversitech Equipment and Sales, Ltd. d/b/a DiversiTech Corporation and d/b/a DiversiTech ("Diversitech"), is a foreign corporation organized and existing under the laws of Canada with a principal place of business located at 1200 55th Avenue, Lachine, Quebec, Canada  H8T 3J8.

4. Hereinafter, Clearstream and Diversitech are collectively referred to as "Defendants."

## JURISDICTION AND VENUE

5. Jurisdiction in this Court is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states and the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

6. Venue in this Court is proper pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions which gave rise to the plaintiff's claims asserted herein occurred within the Southern District of New York.

7. At all times material hereto, Defendant Clearstream regularly conducted business in and maintained substantial and continuous contacts within the Southern District of New York.

8. At all times material hereto, Defendant Diversitech regularly conducted business in and maintained substantial and continuous contacts within the Southern District of New York.

**FACTUAL BACKGROUND**

9. At all times material hereto, Celtic was the owner and/or occupier of the real property and improvements thereon located at 1 Corporate Drive, Orangeburg, New York 10962 (the "Premises").

10. At all times material hereto, Plaintiff was duly authorized to issue policies of insurance in the State of New York and provided insurance to Celtic pursuant to a policy of insurance number MKLM6IM0051322 (the "Policy").

11. At all times material hereto, Defendant Clearstream was engaged in the business of, *inter alia*, designing, manufacturing, assembling, testing, inspecting, marketing, selling, maintaining, repairing, distributing, and/or placing in the stream of commerce certain commercial and/or industrial products, including, but not limited to, an AH-09 Airhawk Cartridge Dust Collector, and similar goods with accompanying component parts for such products intended for use by consumers for the ordinary purposes associated with those items.

12. At all times material hereto, Defendant Clearstream knew and intended that its products, including, but not limited to, the AH-09 Airhawk Cartridge Dust Collector, would be used by members of the general public and knew of the specific uses, purposes and requirements for which said products would be utilized.

13. At all times material hereto, Defendant Diversitech was engaged in the business of, *inter alia*, designing, manufacturing, assembling, testing, inspecting, marketing, selling, maintaining, repairing, distributing, and/or placing in the stream of commerce certain commercial and/or industrial products, including, but not limited to, an AH-09 Airhawk Cartridge Dust

Collector, and similar goods with accompanying component parts for such products intended for use by consumers for the ordinary purposes associated with those items.

14. At all times material hereto, Defendant Diversitech knew and intended that its products, including, but not limited to, the AH-09 Airhawk Cartridge Dust Collector, would be used by members of the general public and knew of the specific uses, purposes and requirements for which said products would be utilized.

15. Prior to January 12, 2018, an AH-09 Airhawk Cartridge Dust Collector (the "Product") was designed, manufactured, assembled, tested, inspected, distributed, and placed into the stream of commerce by the Defendants.

16. Prior to January 12, 2018, Plaintiff's insured, Celtic, purchased the Product from Defendant Clearstream.

17. The Product reached the Premises without substantial change in its condition and it was not altered or modified prior to, or during, its use.

18. On or about January 12, 2018, the Product malfunctioned causing air contaminants to be improperly discharged throughout the Premises causing substantial damage to the Premises and its contents therein (the "Incident").

19. The Product failed as a result of the combined negligence and other liability producing conduct of the Defendants.

20. As a direct and proximate result of the combined negligence and other liability producing conduct of the Defendants, Plaintiff's insured sustained substantial damages to the Premises and the contents therein.

21. As a direct and proximate result of the combined negligence and other liability producing conduct of the Defendants, and pursuant to the Policy, Plaintiff has made payments to, or on behalf of, Celtic in excess of $166,523.25.

22. By virtue of its payments made to, or on behalf of, Celtic, and in accordance with the terms and conditions of the Policy, Plaintiff is now legally, equitably, and contractually subrogated to the rights of Celtic as against Defendants to the extent of said payments.

## COUNT I – STRICT LIABILITY
**(Plaintiff v. Defendant, Clearstream)**

23. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein at length.

24. The Product was designed, manufactured, assembled, tested, inspected, distributed, and placed into the stream of commerce by Defendant, Clearstream.

25. The Product that failed and caused the aforementioned damages to the Premises and its contents therein was defective and unreasonably dangerous for its ordinary and intended use, lacked necessary and adequate warnings and instructions, and was in such unreasonable dangerous and defective condition at the time it left the possession and control of Defendant, Clearstream.

26. The aforementioned defect and/or defective condition existed at the time that the Product left the possession and/or control of Defendant, Clearstream.

27. The aforementioned defect and/or defective condition was latent and unknown to Plaintiff and/or its insured, and Plaintiff and/or its insured could not have discovered the defect and/or defective condition, and/or perceived its danger through the exercise of reasonable care.

28. At all times material hereto, the Product was used in the Premises in an ordinary and intended manner by its intended users without alteration up to the time of its failure.

29. As a direct and proximate result of the conduct, acts, and/or omissions of Defendant, Clearstream, for which it is strictly liable, the Product failed causing the Incident to occur and the Premises and its contents therein to sustain significant damages.

30. As a direct and proximate result of the conduct, acts, and/or omissions of Defendant, Clearstream, for which it is strictly liable, Plaintiff's insured, Celtic, sustained losses for which it was compensated by Plaintiff.

31. By virtue of its payments made to, or on behalf of, Celtic, and in accordance with the terms and conditions of the Policy, Plaintiff is now legally, equitably, and contractually subrogated to the rights of Celtic as against Defendant, Clearstream, to the extent of said payments.

**WHEREFORE**, Plaintiff hereby demands judgment in its favor and against Defendant, Clearstream, individually, jointly, severally, and/or in the alternative, in an amount in excess of $166,523.25, together with pre-judgment interest, post-judgment interest, attorneys' fees, costs, and such other relief as this Honorable Court finds proper and just under the circumstances.

### COUNT II – NEGLIGENCE
**(Plaintiff v. Defendant, Clearstream)**

32. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein at length.

33. Defendant, Clearstream, owed a duty to Plaintiff and its insured to exercise ordinary care in the design, manufacture, assembly, testing, inspection, distribution and/or placing into the stream of commerce of the Product so as to prevent and/or avoid a risk of harm to others.

34. Defendant, Clearstream, owed a duty to Plaintiff and its insured to exercise ordinary care in the design, manufacture, assembly, testing, inspection, distribution and/or placing into the stream of commerce of the Product in compliance with all government and/or industry safety standards, codes, rules, and/or regulations so as to prevent and/or avoid a risk of harm to others.

35. Defendant, Clearstream, through the acts and omissions of its agents, servants, workmen, contractors and/or employees, was negligent and failed to exercise ordinary care in the design, manufacture, assembly, testing, inspection, distribution and/or placing into the stream of commerce of the Product in an improper, unreasonable, negligent, careless, reckless and/or wanton manner.

36. As a direct, proximate, and foreseeable result of Defendant Clearstream's improper, unreasonable, negligent, careless, reckless and/or wanton conduct, the Product failed causing the Incident to occur and the Premises and its contents therein to sustain significant damages.

37. As a direct, proximate, and foreseeable result of Defendant Clearstream's improper, unreasonable, negligent, careless, reckless and/or wanton conduct, Plaintiff's insured, Celtic, sustained losses for which it was compensated by Plaintiff.

38. By virtue of its payments made to, or on behalf of, Celtic, and in accordance with the terms and conditions of the Policy, Plaintiff is now legally, equitably, and contractually subrogated to the rights of Celtic as against Defendant, Clearstream, to the extent of said payments.

**WHEREFORE**, Plaintiff hereby demands judgment in its favor and against Defendant, Clearstream, individually, jointly, severally, and/or in the alternative, in an amount in excess of $166,523.25, together with pre-judgment interest, post-judgment interest, attorneys' fees, costs, and such other relief as this Honorable Court finds proper and just under the circumstances.

## COUNT III – BREACH OF WARRANTIES
### (Plaintiff v. Defendant, Clearstream)

39. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein at length.

40. The sale of the Product was subject to certain implied warranties, including the implied warranty of merchantability, the implied warranty of fitness for particular purpose, and the implied warranty of workmanlike performance.

41. Defendant Clearstream breached the implied warranty of merchantability because the Product was unsafe for its intended, ordinary, and foreseeable use and created an unreasonable risk of failure, and lacked necessary and adequate warnings.

42. Defendant Clearstream breached the implied warranty of fitness for a particular purpose because the Product was unsafe for its use within the Premises and created an unreasonable risk of failure during its ordinary and intended use.

43. As a natural and foreseeable consequence of Defendant Clearstream's breaches of these implied warranties, the Product failed causing the Incident to occur and the Premises and its contents therein to sustain significant damages.

44. As a natural and foreseeable consequence of Defendant Clearstream's breaches of these implied warranties, Plaintiff's insured, Celtic, sustained losses for which it was compensated by Plaintiff.

45. By virtue of its payments made to, or on behalf of, Celtic, and in accordance with the terms and conditions of the Policy, Plaintiff is now legally, equitably, and contractually subrogated to the rights of Celtic as against Defendant, Clearstream, to the extent of said payments.

**WHEREFORE**, Plaintiff hereby demands judgment in its favor and against Defendant, Clearstream, individually, jointly, severally, and/or in the alternative, in an amount in excess of $166,523.25, together with pre-judgment interest, post-judgment interest, attorneys' fees, costs, and such other relief as this Honorable Court finds proper and just under the circumstances.

**COUNT IV – STRICT LIABILITY**
**(Plaintiff v. Defendant, Diversitech)**

46.     Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein at length.

47.     The Product was designed, manufactured, assembled, tested, inspected, distributed, and placed into the stream of commerce by Defendant, Diversitech.

48.     The Product that failed and caused the aforementioned damages to the Premises and its contents therein was defective and unreasonably dangerous for its ordinary and intended use, lacked necessary and adequate warnings and instructions, and was in such unreasonable dangerous and defective condition at the time it left the possession and control of Defendant, Diversitech.

49.     The aforementioned defect and/or defective condition existed at the time that the Product left the possession and/or control of Defendant, Diversitech.

50.     The aforementioned defect and/or defective condition was latent and unknown to Plaintiff and/or its insured, and Plaintiff and/or its insured could not have discovered the defect and/or defective condition, and/or perceived its danger through the exercise of reasonable care.

51.     At all times material hereto, the Product was used in the Premises in an ordinary and intended manner by its intended users without alteration up to the time of its failure.

52. As a direct and proximate result of the conduct, acts, and/or omissions of Defendant, Diversitech, for which it is strictly liable, the Product failed causing the Incident to occur and the Premises and its contents therein to sustain significant damages.

53. As a direct and proximate result of the conduct, acts, and/or omissions of Defendant, Diversitech, for which it is strictly liable, Plaintiff's insured, Celtic, sustained losses for which it was compensated by Plaintiff.

54. By virtue of its payments made to, or on behalf of, Celtic, and in accordance with the terms and conditions of the Policy, Plaintiff is now legally, equitably, and contractually subrogated to the rights of Celtic as against Defendant, Diversitech, to the extent of said payments.

**WHEREFORE**, Plaintiff hereby demands judgment in its favor and against Defendant, Diversitech, individually, jointly, severally, and/or in the alternative, in an amount in excess of $166,523.25, together with pre-judgment interest, post-judgment interest, attorneys' fees, costs, and such other relief as this Honorable Court finds proper and just under the circumstances.

## COUNT V – NEGLIGENCE
**(Plaintiff v. Defendant, Diversitech)**

55. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein at length.

56. Defendant, Diversitech, owed a duty to Plaintiff and its insured to exercise ordinary care in the design, manufacture, assembly, testing, inspection, distribution and/or placing into the stream of commerce of the Product so as to prevent and/or avoid a risk of harm to others.

57. Defendant, Diversitech, owed a duty to Plaintiff and its insured to exercise ordinary care in the design, manufacture, assembly, testing, inspection, distribution and/or placing into the

stream of commerce of the Product in compliance with all government and/or industry safety standards, codes, rules, and/or regulations so as to prevent and/or avoid a risk of harm to others.

58. Defendant, Diversitech, through the acts and omissions of its agents, servants, workmen, contractors and/or employees, was negligent and failed to exercise ordinary care in the design, manufacture, assembly, testing, inspection, distribution and/or placing into the stream of commerce of the Product in an improper, unreasonable, negligent, careless, reckless and/or wanton manner.

59. As a direct, proximate, and foreseeable result of Defendant Diversitech's improper, unreasonable, negligent, careless, reckless and/or wanton conduct, the Product failed causing the Incident to occur and the Premises and its contents therein to sustain significant damages.

60. As a direct, proximate, and foreseeable result of Defendant Diversitech's improper, unreasonable, negligent, careless, reckless and/or wanton conduct, Plaintiff's insured, Celtic, sustained losses for which it was compensated by Plaintiff.

61. By virtue of its payments made to, or on behalf of, Celtic, and in accordance with the terms and conditions of the Policy, Plaintiff is now legally, equitably, and contractually subrogated to the rights of Celtic as against Defendant, Diversitech, to the extent of said payments.

**WHEREFORE**, Plaintiff hereby demands judgment in its favor and against Defendant, Diversitech, individually, jointly, severally, and/or in the alternative, in an amount in excess of $166,523.25, together with pre-judgment interest, post-judgment interest, attorneys' fees, costs, and such other relief as this Honorable Court finds proper and just under the circumstances.

## COUNT VI – BREACH OF WARRANTIES
### (Plaintiff v. Defendant, Diversitech)

62. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein at length.

63. The sale of the Product was subject to certain implied warranties, including the implied warranty of merchantability, the implied warranty of fitness for particular purpose, and the implied warranty of workmanlike performance.

64. Defendant Diversitech breached the implied warranty of merchantability because the Product was unsafe for its intended, ordinary, and foreseeable use and created an unreasonable risk of failure, and lacked necessary and adequate warnings.

65. Defendant Diversitech breached the implied warranty of fitness for a particular purpose because the Product was unsafe for its use within the Premises and created an unreasonable risk of failure during its ordinary and intended use.

66. As a natural and foreseeable consequence of Defendant Diversitech's breaches of these implied warranties, the Product failed causing the Incident to occur and the Premises and its contents therein to sustain significant damages.

67. As a natural and foreseeable consequence of Defendant Diversitech's breaches of these implied warranties, Plaintiff's insured, Celtic, sustained losses for which it was compensated by Plaintiff.

68. By virtue of its payments made to, or on behalf of, Celtic, and in accordance with the terms and conditions of the Policy, Plaintiff is now legally, equitably, and contractually subrogated to the rights of Celtic as against Defendant, Diversitech, to the extent of said payments.

**WHEREFORE**, Plaintiff hereby demands judgment in its favor and against Defendant, Diversitech, individually, jointly, severally, and/or in the alternative, in an amount in excess of $166,523.25, together with pre-judgment interest, post-judgment interest, attorneys' fees, costs, and such other relief as this Honorable Court finds proper and just under the circumstances.

Respectfully submitted,

Dated:  April 24, 2020    **LAW OFFICES OF ROBERT A. STUTMAN, P.C.**

/s/ *Kenneth B. Grear*

Kenneth B. Grear, Esquire (NY Bar # 4625349)
George J. Matz, Esquire (to be admitted *pro hac vice*)
500 Office Center Drive, Suite 301
Fort Washington, PA 19034
P: (215) 283-1177
F: (215) 283-1188
greark@stutmanlaw.com
matzg@stutmanlaw.com

*Counsel for Plaintiff*